**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION**

| | |
|---|---|
| **ROY A. PASCO, et al.** | **PLAINTIFFS** |
| **v.** | **CAUSE NO.: 1:03CV179** |
| **BRAD KNOBLAUCH** | **DEFENDANT** |

**MEMORANDUM OPINION**

Comes now before this Court, Defendant Brad Knoblauch's Motion for Summary Judgment and the Plaintiffs' Motion to Strike defendant's affirmative defenses. The Defendant also has an outstanding Motion to Stay Discovery in this case. After reviewing the motions, responses, rules, and authorities, the Court makes the following findings:

*Factual and Procedural Background*

During the pre-dawn hours of April 29, 2000, Brad Knoblauch, a Holly Springs, Mississippi, police officer, was on duty conducting routine traffic patrol and DUI enforcement near the intersection of Memphis Street and Martin Luther King Drive. Officer Knoblauch observed a red Ford Probe turn off Martin Luther King Drive at a high rate of speed. The officer pulled behind the vehicle and observed the driver with a beverage container tipped up. Officer Knoblauch contends that he did not pull the red Ford Probe over at this point in an attempt to gather more information on the driver's impairment and establish probable cause for a later arrest. Upon observing the Probe run a stop sign, Knoblauch turned on his blue lights and siren. The driver, Roy Pasco, Jr., pulled his vehicle to the right side of the road, but when Knoblauch stepped out of the police cruiser, Pasco sped off. Knoblauch radioed the dispatcher and reported that Pasco and he were engaged in a high speed chase in excess of ninety miles per hour. Officer Knoblauch reported that they were

approaching the edge of the city on an extremely curvy road, and Pasco was having trouble negotiating the sharp curves at the high rate of speed. Another policeman, Officer Jason Martin alerted the dispatch that he was in route to aid Knoblauch in the chase. However, Sergeant Kitchens, the supervising officer on duty, immediately terminated the pursuit. From the time Knoblauch radioed he was in pursuit of Pasco until the termination, one minute elapsed. It is at this point that the parties' version of the facts diverge significantly.

Officer Knoblauch avers that he terminated the pursuit - "let off the gas, applied my brakes, turned off my lights and my siren, and . . . slowed down." As he was driving back towards town, Knoblauch came across Officer Martin and informed him that he was going to look for a cross street in order to help the county officers track Pasco. He turned on his "alley lights" in order to see the cross street signs, and further contends that as he turned up Deer Lane, he observed rocks in the road and observed a red reflection in the left side ditch. He alleges that he backed up, looked, and shined his spotlight down into the embankment where he saw a vehicle overturned. Officer Martin arrived shortly after Knoblauch. Upon investigating the wreck, Officers Knoblauch and Martin noticed that Pasco's body was some distance away from the wrecked vehicle. The officers called the ambulance and radioed for ME-1, the medical examiner. Officer Knoblauch maintains that Pasco lost control of his car in a curve and left the road because of his high rate of speed.

The Plaintiffs contend that Officer Knoblauch did not terminate his pursuit of Pasco as instructed, and instead, allege that he intentionally rammed into the rear of Pasco's vehicle and caused it to careen into the embankment. They contend that this action was an unlawful seizure in violation of the Fourth Amendment.

The facts of this case have been much litigated. Initially, Plaintiffs sued the City of Holly

Springs under 42 U.S.C. § 1983 alleging a violation of the Fourth Amendment's prohibition on unreasonable seizures. See Pasco v. Holly Springs, 1:01cv247, (Pasco I). This Court granted summary judgment for the City, and while that case was pending before the Fifth Circuit, Plaintiffs instituted this suit against Officer Knoblauch in his individual capacity. The Fifth Circuit ultimately affirmed the district court's grant of summary judgment finding that the Plaintiffs' failed to establish a theory of municipal liability in Pasco I. Pasco v. Holly Springs, 101 Fed. Appx. 6 (5th Cir. 2004). However, the appeals court declined to reach the underlying Fourth Amendment issue in Pasco I.

In this case, the Complaint [1] was filed on April 24, 2003, and the Defendant filed a Motion to Dismiss [4] on June 10, 2003, as the first responsive pleading. Thereafter, Judge Michael P. Mills terminated the motion to dismiss pending the Fifth Circuit's ruling in Pasco I. After the Fifth Circuit failed to reach the Fourth Amendment issue that would have been dispositive here, Knoblauch renewed his motion to dismiss on August 30, 2004 [12]. Thereafter, Knoblauch requested that his renewed Motion to Dismiss be withdrawn [21],[1] the district court granted the withdrawal and provided an additional twenty days to file his dispositive motions [22].

On April 11, 2005, Officer Brian Knoblauch filed a Motion for Summary Judgment [24], which was granted by the district court [43] on the basis that the issues of the present cause of action were merely a relitigation of Pasco I and could not be sustained due to the Plaintiffs' failure to prove the officer's state of mind. The Plaintiffs subsequently appealed to the Fifth Circuit where the case was reversed and remanded back to the district court. In a per curiam decision handed down on

---

[1]In order to allow a scheduling order to be entered and have the trial court rule on the merits of the case as soon as possible, the Defendant withdrew the motion to dismiss. Further, Defendant's motion to withdraw acknowledged that the contended reason for dismissal, *res judicata,* was not viable in light of certain authority.

March 12, 2007, the Court found that the "record taken as a whole raises an issue as to Knoblauch's intent." Pasco v. Knoblauch, 223 Fed. Appx. 319, 320 (5th Cir. 2007). They concluded that the better course would be for a jury to resolve the question of Knoblauch's intent after hearing all the evidence, rather than the court to decide it summarily. Id. at 322.

The Defendant filed another motion for summary judgment [60] on July 10, 2007, alleging for the first time in the case sub judice that the Defendant was protected by qualified immunity. On August 8, 2007, Knoblauch finally entered an Answer and Affirmative Defenses [67] contending that he could avoid litigation by virtue of his qualified immunity. On August 24, 2007, the Plaintiffs filed a motion to strike defendant's affirmative defenses [72]. Four days later, on August 28, 2007, the Defendant filed a motion to stay the proceedings pending resolution of their motion for summary judgment [74].

*Motion to Strike*

Plaintiffs filed a Motion to Strike alleging that the Defendant waived the affirmative defense of qualified immunity by not pleading it prior to appeal to the Fifth Circuit. The Defendant asserts that new Supreme Court precedence handed down on April 30, 2007, changed the law; therefore, he should be able to assert the defense in light of the changed legal landscape.

Traditionally, public officials, including law enforcement officers such as the individual defendant here, are entitled to assert the defense of qualified immunity in a § 1983 suit for discretionary acts occurring in the course of their official duties. Harlow v. Fitzgerald, 457 U.S. 800, 806, 102 S. Ct. 2727, 73 L. Ed. 2d 396, (1982); Gagne v. City of Galveston, 805 F.2d 558, 559 (5th Cir. 1986). Qualified immunity, however, is an affirmative defense; the burden of pleading and proving it rests with the defendant. See Gomez v. Toledo, 446 U.S. 635, 100 S. Ct. 1920, 1924, 64

4

L. Ed. 2d 572, 578 (1980). Federal Rule of Civil Procedure 8(c) requires that a party set forth a defense affirmatively where that defense establishes avoidance. Indeed, whenever qualified immunity is asserted as an affirmative defense in a § 1983 action, resolution of the issue should occur at the earliest possible stage. Anderson v. Creighton, 483 U.S. 635, 639, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987). The Fifth Circuit has held that issues of qualified immunity are determined from the face of the pleadings and without extended resort to pre-trial discovery. Babb v. Dorman, 33 F.3d 472, 477 (5th Cir. 1994).

Rule 8(c) of the Federal Rules of Civil Procedure requires that affirmative defenses be asserted in the responsive pleading. Rule 12(a) governs the time required to file an answer and provides, "Unless a different time is prescribed in a statute of the United States, a defendant shall serve an answer [] within 20 days after being served with the summons and complaint." Moreover, Local Rule 16.1(B)(4)(a) states that an immunity defense "shall be raised by a separate motion **as expeditiously as possible** after the filing of the complaint." (Emphasis added). However, where the matter is raised in the trial court in a manner that does not result in unfair surprise, the Fifth Circuit has held that technical failure to comply precisely with Rule 8(c) is not fatal. Jones v. Miles, 656 F.2d 103, 107 n. 7 (5th Cir. 1981).

Here, the answer was filed fifty-two (52) months, or over four (4) years, after the complaint was filed. The first time qualified immunity was even mentioned in the proceeding was over four (4) years after the filing of the action. The Defendant alleges that the factual basis of the case and "legal landscape" surrounding this issue changed such that their qualified immunity defense was only viable after the date of that decision. The Court finds this argument to be disingenuous. The Defendant was not precluded at any time prior to August 8, 2007, from filing an answer with

possible affirmative defenses in order to preserve his qualified immunity defense. Indeed, the Plaintiffs initially asserted their "bump" theory in the Complaint. Specifically, the fourth paragraph of the Complaint states:

> On or about April 29, 2000, the Defendant Knoblauch, acting under color of state law, chased Roy Gene Pasco, Jr. for a traffic offense. The chase was a high-speed chase outside the city limits of Holly Springs, and culminated when Knoblauch struck the Pasco vehicle in the rear, knocking it off into a deep ravine.

Therefore, the qualified defense was available from the first filing. The Defendant had an obligation to protect his qualified immunity. The Defendant's answer, therefore, is untimely and the affirmative defenses asserted are struck.

The Defendant also alleged that he was entitled to qualified immunity in his motion for summary judgment filed in July of 2007. The Fifth Circuit has held that a defendant does not waive an affirmative defense if he "raised the issue at a pragmatically sufficient time, and [the plaintiff] was not prejudiced in its ability to respond." Giles v. Gen. Elec. Co., 245 F.3d 474, 493 (5th Cir. 2001) (citing Allied Chem. Corp. v. Mackay, 695 F.2d 854, 856 (5th Cir. 1983)). Moreover, the Fifth Circuit has held that where the law on the affirmative defense topic is unsettled, the defendant did not waive the affirmative defense where it was first asserted in the motion for judgment on the pleadings and did not surprise the plaintiff in any way. Johnson v. Johnson, 385 F.3d 503, 516 (5th Cir. 2004).

The law on qualified immunity is clearly and firmly settled. In the case *sub judice*, the contention that the Defendant is not amenable to suit because of his qualified immunity over four years after the filing of the complaint does prejudice and surprise the Plaintiff. For these reasons, we find that the Defendant did not raise the qualified immunity defense at a "pragmatically sufficient

6

time." Therefore, all assertions of qualified immunity as a potential defense for the Defendant are prohibited.

Regardless of whether Defendant is procedurally precluded from asserting qualified immunity, the Court notes that the Defendant would not be protected by this defense even if it was timely made. Taking the facts in the light most favorable to the non-movant, as we must, if Knoblauch did bump Pasco off the roadway, the law was clearly established, as of the date of the accident in 2000, that it was a constitutional violation for an officer to use his car to effectuate deadly force for a traffic violation. Tennessee v. Garner, 471 U.S. 1, 9, 11, 105 S. Ct. 1694, 85 L. Ed. 2d 1 (1985).

Under qualified immunity, an official who acted unconstitutionally, but did not violate clearly established federal law will be found to have acted in an objectively reasonable manner and will be protected from personal liability by qualified immunity. Harlow v. Fitzgerald, 457 U.S. at 818, 102 S. Ct. 2727. On the other hand, an official who violated clearly established federal law will not be protected by qualified immunity and will be subject to personal liability.

"[T]he determination whether a right is 'clearly established' is a more particularized inquiry" that focuses on whether a reasonable official would know that the specific act in question was unlawful. Anderson v. Creighton, 483 U.S. at 639-40, 107 S. Ct. 3034. "Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct. If the law at that time did not clearly establish that the officer's conduct would violate the Constitution, the officer should not be subject to liability or, indeed, even the burdens of litigation." Brosseau v. Haugen, 543 U.S. 194, 198, 125 S. Ct. 596, 160 L. Ed. 2d 583 (2004). Because the incident at issue here occurred in 2000, we must analyze Officer

Knoblauch's qualified immunity in light of the law in the year 2000.

Pursuant to Brower v. County of Inyo, using a vehicle to stop and apprehend a suspect is a seizure. 489 U.S. 593, 596-99, 109 S. Ct. 1378, 103 L. Ed. 2d 628 (1989). In Brower, the Supreme Court held that a fleeing suspect who fatally crashed into a so-called "deadman" roadblock during a high speed chase had been seized by the police who set up the roadblock. Id. at 599, 109 S. Ct. 1378. The Court further noted that if "the police cruiser had pulled alongside the fleeing car and sideswiped it, producing the crash, then the termination of the suspect's freedom of movement would have been a seizure." Id. at 597, 109 S. Ct. 1378. Therefore, taking the facts in the most favorable light to the Plaintiffs, Knoblauch clearly effectuated a seizure of Pasco by allegedly rear-ending his car off the roadway.

This is not the end of the inquiry, however. We must next determine whether the force used by Knoblauch to effectuate that seizure was reasonable in light of the facts according to the Plaintiffs. In Tennessee v. Garner, the United States Supreme Court made clear that the reasonableness of a seizure "depends on not only when a seizure is made, but also how it is carried out." 471 U.S. at 8, 105 S. Ct. 1694. The law regarding the reasonableness of police seizures for the year 2000 can be stated in this way: the use of deadly force may not be used to seize a fleeing felon "unless it is necessary to prevent the escape and the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others." Id. at 3, 105 S. Ct. 1694. Furthermore, the Court concluded that "the use of deadly force to prevent the escape of all felony suspects, whatever the circumstances, is constitutionally unreasonable." Id. at 11, 105 S. Ct. 1694. Here, Knoblauch was chasing Pasco on the belief that Pasco was intoxicated and ran a stop light. These facts are not sufficient to prove that the suspect posed a significant threat

8

of death or serious physical injury to the officer or others.

Under an objective view of the facts of this case, little dispute exists that the ramming of Pasco's car could constitute a use of "deadly force" and that a jury could so reasonably conclude. Moreover, Knoblauch was expressly told to terminate the pursuit by his supervising officer and was outside the bounds of his jurisdiction. "The undisputed evidence also showed that Holly Springs's written policy on high speed chases by police officers provided that supervisors could order the termination of any pursuit." Pasco v. Holly Springs, 101 Fed. Appx. at 8. Therefore, if the facts are as the Plaintiffs allege, all actions taken after that termination were without the authority of the Holly Springs Police Department. In Wyatt v. Cole, the Supreme Court held that Harlow qualified immunity applies to governmental officials "where it is necessary to preserve their ability to serve the public good or to ensure that talented candidates were not deterred by the threat of damage suits from entering public service." 504 U.S. 158, 167, 112 S. Ct. 1827, 118 L. Ed. 2d 504 (1992). The Court further explained that the defense is designed to "protect the public at large, not to benefit its agents." Id. at 168, 112 S. Ct. 1827. Therefore, to reward Knoblauch's insubordination and clear obfuscation of his duties with the gift of qualified immunity would be against the purposes set out by the Supreme Court in the recognition of qualified immunity.

Accordingly, the ramming of Pasco's car into an embankment cannot be said to be objectively reasonable in light of the clearly established Supreme Court precedent holding that using a police car to run a suspect off the road in order to seize that person is unconstitutional and unreasonable. Therefore, even if Knoblauch was not procedurally precluded from asserting qualified immunity as a defense, he is substantively precluded due to the unreasonableness of his conduct in light of that clearly established law.

*Motion for Summary Judgment*

Summary judgment is warranted under Rule 56(c) of the Federal Rules of Civil Procedure when evidence reveals no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law. The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact. Id. at 323. The non-moving party must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." Id. at 324; Willis v. Roche Biomedical Labs., Inc., 61 F.3d 313, 315 (5th Cir. 1995). Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts showing a genuine issue for trial. TIG Ins. Co. v. Sedgwick James of Wash., 276 F.3d 754, 759 (5th Cir. 2002); SEC v. Recile, 10 F.3d 1093, 1097 (5th Cir. 1997); Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." Little, 37 F.3d at 1075. When such contradictory facts exist, the court may "not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Prods. Inc., 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000).

The Court is cognizant that police pursuit and Fourth Amendment seizure inquiries are fact-intensive examinations. Here, the Defendant asserts that the United States Supreme Court case, Scott v. Harris, establishes that bumping a suspect's car off the road does not constitute a violation of the Fourth Amendment where the police are attempting to end the chase in order to protect public safety. — U.S. —, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (Apr. 30, 2007). Accordingly, we summarize Scott below and compare the facts sub judice with that seminal case.

In Scott, a motorist brought a § 1983 action against a county deputy, alleging, inter alia, use of excessive force during a high speed chase in violation of his Fourth Amendment rights. Id. at 1772-73. Specifically, the suspect led the county deputies down two-lane roads at speeds in excess of eighty-five miles per hour. Id. at 1772. The lead deputy, Scott, with permission from his supervising officer, was ordered to perform a "Precision Intervention Technique" ("PIT") which causes fleeing vehicles to spin to a stop. Id. at 1773. Instead of instigating a PIT, however, Scott applied his push bumper to the rear of the suspect's vehicle. Resultantly, the suspect lost control of the vehicle; the vehicle left the roadway, ran down an embankment, overturned and crashed. The suspect was left badly injured and rendered a quadriplegic. Id.

The United States Supreme Court determined that the deputy's actions did not violate the Fourth Amendment because his conduct was objectively reasonable. Id. at 1778. The Court thought it appropriate to investigate the number of lives at risk and their relative culpability during the chase and found that innocent bystander safety outweighed the safety of one who intentionally placed himself in the dangerous situation by unlawfully engaging in a reckless high-speed chase. Moreover, the Court found that even with the option of the police ceasing the pursuit, Scott's actions were objectively reasonable because there would have been no way to effectively or convincingly convey

11

to the suspect that he was free to go. Id. at 1778-79. The Court stated, "Given such uncertainty, [the suspect] might have been just as likely to respond by continuing to drive recklessly as by slowing down and wiping his brow." Id at 1779.

The Court candidly noted that it was reluctant to establish a rule requiring the police to allow fleeing suspects to get away whenever they drive so recklessly that they put other's lives in danger. Id. at 1779. Instead, the Court outlined the following rule in Scott v. Harris :

> A police officer's attempt to terminate a dangerous high speed car chase that threatens the lives of innocent bystanders does not violate the Fourth Amendment, even when it places the fleeing motorist at risk of serious injury or death.

Id.

Officer Knoblauch contends that this ruling from the United States Supreme Court absolves him of liability. In fact, he asserts that even if the Plaintiffs' facts are taken as true, the Supreme Court has ruled that those actions do not violate the Fourth Amendment.

The case sub judice is clearly distinguishable from the factual situation in Scott in a most important way: Officer Knoblauch's supervising officer terminated the pursuit prior to Pasco's accident. The officer in Scott had direct permission from his supervisor to continue the chase and perform a maneuver to stop the suspect from fleeing. Assuming the facts asserted by the Plaintiff are true as required for the summary judgment standard, if Knoblauch did cause this accident, it was in direct violation of his supervising officer's orders. Therefore, Officer Knoblauch, in not terminating the pursuit, was acting contrary to police department protocol, whereas, the deputy in Scott had full authority to take actions necessary to end the high speed chase.

As Officer Knoblauch does not have the protection of qualified immunity for the reasons set

forth above, he does not have the benefit of the Scott v. Harris ruling. Because there are genuine factual disputes at issue here, Defendant Knoblauch's Motion for Summary Judgment is denied.

*Conclusion*

The Defendant's untimely notification of his intent to assert qualified immunity as an affirmative defense is detrimental to his defense in this case. The Plaintiffs' Motion to Strike Defendant's affirmative defenses is hereby GRANTED. The Defendant's Motion for Summary Judgment is DENIED as the Defendant had to respect the authority given him by his supervising officer in order to take advantage of the United States Supreme Court case law. Accordingly, the Motion to Stay is DENIED as moot.

A separate order in accordance with this opinion shall issue this day.

This the  6th  day of March 2008.

                                        **/s/ Sharion Aycock**
                                        **U.S. DISTRICT JUDGE**